MICHAEL A. SHERMAN (SBN 94783)
masherman@stubbsalderton.com
JEFFREY F. GERSH (SBN 87124)
jgersh@stubbsalderton.com
SANDEEP SETH (SBN 195914)
sseth@ stubbsalderton.com
WESLEY W. MONROE (SBN 149211)
wmonroe@stubbsalderton.com
STANLEY H. THOMPSON, JR. (SBN 198825)
sthompson@stubbsalderton.com
VIVIANA B. HEDRICK (SBN 239359)
vhedrick@stubbsalderton.com
STUBBS ALDERTON MARKILES, LLP
15260 Ventura Boulevard, 20TH Floor
Sherman Oaks, CA  91403
Telephone:      (818) 444-4500
Facsimile:       (818) 444-4520

Attorneys for PERSONALWEB
TECHNOLOGIES, LLC

J. DAVID HADDEN (CSB No. 176148)
dhadden@fenwick.com
SAINA S. SHAMILOV (CSB No. 215636)
sshamilov@fenwick.com
MELANIE L. MAYER (admitted *pro hac vice*)
mmayer@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
RAVI R. RANGANATH (CSB No. 272981)
rranganath@fenwick.com
SHANNON E. TURNER (CSB No. 310121)
sturner@fenwick.com
CHIEH TUNG (CSB No. 318963)
ctung@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:      650.988.8500
Facsimile:       650.938.5200

Counsel for Defendant
TWITCH INTERACTIVE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE PERSONAL WEB TECHNOLOGIES, LLC, ET AL., PATENT LITIGATION | **CASE NO.: 5:18-MD-02834-BLF-SVK** |
| PERSONALWEB TECHNOLOGIES, LLC, a Texas limited liability company, and LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company<br>            Plaintiffs,<br><br>v.<br><br>TWITCH INTERACTIVE, INC. a Delaware corporation,<br>            Defendant.<br>. | CASE NO.: 5:18-CV-05619-BLF-SVK<br><br>**JOINT STATEMENT REGARDING PERSONALWEB TECHNOLOGIES, LLC.'S MOTION TO COMPEL TWITCH INTERACTIVE, INC. TO PROVIDE FURTHER SUPPLEMENTAL RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>Trial Date: March 16, 2020 |

## I. PERSONALWEB'S STATEMENT

This case against Twitch is directed to HTTP caching using content-based identifiers. PersonalWeb accuses Twitch of using HTTP cache control headers such as max-age value and content-based ETags, in conjunction with other aspects of the HTTP protocol, to carry out the claimed method of controlling distribution of its webpage content to invalidate and revalidate the access rights of browsers. (See, e.g., FAC, Dkt. 13 at ¶¶ 42-52.) PersonalWeb is entitled to information regarding all the benefits to Twitch[1] of using the accused HTTP cache control method to calculate damages. Nevertheless, Twitch has refused to provide data regarding infrastructure cost savings from its use of HTTP caching, data relating to lower web-page load times due to caching, or data relating to revenue increase or user-base increase through HTTP caching as a result of lower load times, despite repeated requests for the same, necessitating the Court's intervention. This information is relevant to damages because the benefits from Twitch's practice of HTTP cache control using content-based identifiers are factors to be considered under a Georgia-Pacific damages analysis. All of the documents sought in this motion to compel bear on these issues. Fact discovery closed on August 16, 2019. (Dkt. 491) The parties have met and conferred on these topics several times, most recently on August 19, 2019. The requests are attached as **Exhibits 1-3**.

**Documents regarding infrastructure cost savings from caching, lower web-page load times from caching, or revenue increase or user-base increase through caching as a result of lower load times.** Twitch has refused to produce these documents that are necessary for PersonalWeb's damages calculations. Twitch has not produced any of the following:

- web analytics reflecting user tracking, web traffic, page loads, page load time, impressions or ad loads, daily active sessions, and average page load time (RFPs 8, 12, 13, 14, 17, 33, 34, 77, 78, 89, 110, 111);
- web analytics reflecting number of users versus load time, revenue versus load time, or ad impressions versus load time (RFPs 8, 12, 13, 14, 17, 33, 34, 77, 78, 89, 110, 111);
- monitoring and tracking reports of impressions/time, session time/time, load time/time,

---

[1] PersonalWeb is no longer pursuing its counterclaims against AWS on the basis of discovery and the Court's Claim Construction (Dkt. 485) and is working on a stipulation to a final judgment.

    revenue/time, and number of users/time (RFPs 8, 12, 13, 14, 17, 33, 34, 77, 78, 89, 110, 111).

- native QuickBooks or NetSuite files from 2011-2019 (Mr. Cellini, Twitch's financial witness, testified he could have run these reports, but did not.) (requested in at least RFPs 7, 16, and 26);
- a cost report listing vendors and transactions, particularly as they relate to infrastructure and bandwidth costs in the "tech service cost" COGS category (Mr. Cellini also testified he could have run this report, but did not.) (RFPs 12, 16, 26, 72, 112);
- other documents that show the costs to transfer data to browsers or cost savings from caching (RFPs 12, 28, 33, 34, 43, 45, 62, 72, 112);
- documents, web logs, user logs that reflect the number of HTTP 200 and 304 messages or data consumed thereto (RFPs 8, 78, 84, 85, 86, 93, 115); and
- documents regarding comparisons made between using HTTP cache control using Content-Based ETags or Fingerprints, as compared to any other forms of cache-control (RFP 98).

These metrics directly impact the Georgia-Pacific factors relating to the profitability, utility, and advantages of the patented technology over alternative solutions. They also directly prove the value and benefits to Twitch of using the patented technology. PersonalWeb would be unable to complete a damages estimate that reflects all of the value of the patent without access to these documents, therefore, the Court should compel their production.

## II.  TWITCH'S STATEMENT

PersonalWeb's request for what it contends are infrastructure-related documents is an improper and belated attempt to serve document requests past the close of fact discovery. PersonalWeb could have—but did not—serve document requests for the broad categories of documents sought above. Instead, PersonalWeb waited until the eleventh hour to seek these documents under the guise that they are responsive to previously served requests. But the RFPs referenced in PersonalWeb's bullet points 1-6 above do not support the categories of documents requested here. And even to the extent that these new categories of documents could conceivably fall within a previously served document request, the information sought is irrelevant and grossly out of

2

1  proportion to any need in the case.  Further, Twitch has confirmed that it does not have or has already
2  produced or agreed to produce documents responsive to bullet points 5, 7, and 8 above.

3        As an initial matter, Twitch has already confirmed that it does not have documents in its
4  possession, custody, or control that reflect the number of HTTP 200 and 304 messages or data
5  consumed thereto from the relevant time period.  PersonalWeb's insistence on seeking the Court's
6  intervention despite Twitch's representation that no such documents exist is nothing more than an
7  attempt to drive up Twitch's litigation costs.  Moreover, to the extent that any "documents regarding
8  comparisons made between using HTTP cache control using Content-Based ETags or Fingerprints, as
9  compared to any other forms of cache-control" exist in Twitch's possession, custody, or control,
10 Twitch has already produced such documents.  Twitch cannot produce additional documents it does
11 not have.  *Littlefield v. NutriBullet, L.L.C.*, No. CV 16-6894 MWF (SSX), 2017 WL 10439692, at *3
12 (C.D. Cal. Dec. 20, 2017) ("[T]he court cannot order a party to produce documents that do not exist.
13 A mere suspicion that additional documents must exist is an insufficient basis to grant
14 a motion to compel.").

15       Next, PersonalWeb seeks broad categories of metrics, including web analytics reflecting user
16 tracking, web traffic, page loads, page load time, impressions or ad loads, daily active sessions,
17 average page load time, number of users versus load time, revenue versus load time, or ad
18 impressions versus load time, and monitoring and tracking reports of impressions/time, session
19 time/time, load time/time, revenue/time, and number of users/time.  But none of the RFPs
20 PersonalWeb cites request these metrics.  The only request that could conceivably cover a portion of
21 any of these metrics is RFP 8, which seeks documents summarizing Twitch's "volume of website
22 data traffic in terms of the number of HTTP messages, number of bytes, or both, sent with Content-
23 Based ETags and/or Fingerprints during the Relevant Time Period."  Twitch, however, does not have
24 documents in its possession, custody, or control that reflect the volume of website data traffic sent
25 with content-based ETags or fingerprints during the relevant time period—which it stated in its
26 response to RFP 8.  To the extent PersonalWeb seeks metrics unrelated to Twitch's use of content-
27 based ETags or fingerprints, PersonalWeb has propounded no document requests seeking this
28 information.  Regardless, PersonalWeb's requests for broad website metrics untethered to the accused

3

JOINT STATEMENT RE MOTION TO COMPEL                       CASE NO: 5:18-md-02834-BLF-SVK
TWITCH TO PROVIDE FURTHER SUPPLEMENTAL                    CASE NO. 5:18-cv-05619-BLF-SVK
RESPONSES TO REQUEST FOR PRODUCTION

functionality of the twitch.tv website—namely, the use of content-based ETags or fingerprints—are not relevant to any claim or defense in this action and are not proportional to the needs of the case.

Likewise, PersonalWeb's request for "native QuickBooks or NetSuite files from 2011-2019" goes well beyond the scope of permissible discovery and is unduly intrusive. Because the patents-in-suit expired in 2016, Twitch provided PersonalWeb with its financial statements for the relevant time period of 2012-2016. Twitch has also provided a report of the transactions underlying the "tech service cost" expenses reflected in Twitch's financial statements for 2015-2016 and will produce the same data for 2012-2014, to the extent such a report can be run for that time period. Twitch's financial data outside of the 2012-2016 time period, particularly after the patents expired, is not relevant at all. PersonalWeb has not identified any financial information it seeks that Twitch has not otherwise provided or agreed to provide. Instead, PersonalWeb is asking for access to Twitch's highly sensitive financial files as a fishing expedition. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (citation omitted) ("District courts need not condone the use of discovery to engage in 'fishing expedition[s].'").

Finally, PersonalWeb seeks "other documents that show the costs to transfer data to browsers or cost savings from caching." Twitch's financial statements and its technical service cost transactions provide all of the information necessary for PersonalWeb to ascertain "the costs to transfer data to browsers." And, to the extent documents concerning "cost savings from caching" exist in Twitch's possession, custody, or control, Twitch has produced such documents. Again, PersonalWeb does not articulate any basis for compelling Twitch to produce additional documents outside of what Twitch has already agreed to provide.

Dated:   August 23, 2019                    STUBBS, ALDERTON & MARKILES, LLP

                                            By: /s/ Sandeep Seth
                                                Michael A. Sherman
                                                Jeffrey F. Gersh
                                                Sandeep Seth
                                                Wesley W. Monroe
                                                Stanley H. Thompson
                                                Viviana Boero Hedrick
                                                Attorneys for PERSONALWEB
                                                TECHNOLOGIES, LLC

| | | |
|---|---|---|
| 1 | Dated: August 23, 2019 | MACEIKO IP |
| 2 | | |
| 3 | | Theodore S. Maceiko (SBN 150211) |
| | | ted@maceikoip.com |
| | | MACEIKO IP |
| 4 | | 420 2nd Street |
| | | Manhattan Beach, CA  90266 |
| 5 | | Telephone: (310) 545-3311 |
| | | Facsimile: (310) 545-3344 |
| 6 | | |
| 7 | | Attorneys for Plaintiff |
| | | PERSONALWEB TECHNOLOGIES, LLC, a |
| 8 | | Texas limited liability company |
| 9 | | |
| 10 | Dated: August 23, 2019 | FENWICK & WEST LLP |
| 11 | | |
| | | By: /s/ Melanie L. Mayer |
| 12 | | Melanie L. Mayer |
| 13 | | Attorneys for TWITCH INTERACTIVE, INC. |