1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| IN RE PERSONALWEB TECHNOLOGIES, LLC, ET AL., PATENT LITIGATION | Case No.  18-md-02834-BLF |
| | Case No.  18-cv-00767-BLF |
| AMAZON.COM, INC. And AMAZON WEB SERVICES, INC., | Case No.  18-cv-05619-BLF |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART AMAZON'S MOTION FOR FURTHER SUPPLEMENTAL FEES** |
| v. | |
| PERSONALWEB TECHNOLOGIES, LLC, et al., | Re: ECF No. 880 (Case No. 18-md-02834) |
| Defendants. | Re: ECF No. 375 (Case No. 18-cv-00767) |
| PERSONALWEB TECHNOLOGIES, LLC, et al., | Re: ECF No. 280 (Case No. 18-cv-05619) |
| Plaintiffs, | |
| v. | |
| TWITCH INTERACTIVE, INC., | |
| Defendant. | |

Pending before the Court is Amazon.com, Inc., Amazon Web Services, Inc., and Twitch Interactive, Inc.'s (collectively, "Amazon") Motion for Further Supplemental Fees (the "Motion"). *See* Mot., ECF No. 880.[1]  Amazon seeks attorney fees and costs from PersonalWeb Technologies, LLC ("PersonalWeb") for work performed between March 2021 and March 2023.  *See id.* at 1. PersonalWeb disputes the majority of the fees.  *See* Corrected Opp'n ("Opp'n"), ECF No. 889-1. The Court heard oral argument on the Motion on November 16, 2023.  Having considered the parties' written submissions and oral arguments, the Court GRANTS IN PART and DENIES IN

---

[1] All ECF citations refer to the docket of the lead case, *In re PersonalWeb Technologies Patent Litigation*, No. 18-md-2834 (N.D. Cal.).

PART the Motion, for the reasons described below.

## I.      BACKGROUND

This multi-district litigation stems from PersonalWeb filing dozens of suits in 2018 against Amazon and a bevy of its customers, in which it asserted patent infringement claims that this Court has found—in an order affirmed by the Federal Circuit—were objectively baseless and not reasonable when brought.  *See* Order Re Exceptional Case 33, ECF No. 636; *In re PersonalWeb Techs. LLC*, 85 F.4th 1148, 1154–57 (Fed. Cir. 2023).  The Court granted Amazon's motions for summary judgment in two phases, and by February 3, 2020, Amazon had won on summary judgment as to all claims.  *See* ECF Nos. 394, 578.  The Court entered judgment against PersonalWeb in the MDL action and all member cases on October 28, 2020.  *See* J., ECF No. 643. The Court then entered an amended judgment on July 27, 2021, that incorporated fees and costs awarded by the Court in orders issued on March 2, 2021, and April 19, 2021.  *See* Am. J., ECF No. 708; *see also infra*, at Part I(A).

### A.      Prior Requests for Attorney Fees and Costs

Amazon moved for attorney fees and costs for the first time in March 2020.  *See* ECF No. 593.  The Court granted that motion in October 2020, reasoning that the case was exceptional because:

> (1) PersonalWeb's infringement claims related to Amazon S3 were objectively baseless and not reasonable when brought because they were barred due to a final judgment entered in the Texas Action; (2) PersonalWeb frequently changed its infringement positions to overcome the hurdle of the day; (3) PersonalWeb unnecessarily prolonged this litigation after claim construction foreclosed its infringement theories; (4) PersonalWeb's conduct and positions regarding the customer cases were unreasonable; and (5) PersonalWeb submitted declarations that it should have known were not accurate.

Order Re Exceptional Case 33.  On March 2, 2021, following additional briefing requested by the Court on whether the fees requested by Amazon were reasonable, the Court awarded Amazon over $4.6 million in attorney fees and $203,300.10 in non-taxable costs for work performed from January 2018 through January 2020.  *See* First Fee Award 9, 30, ECF No. 648.

On March 11, 2021, Amazon filed a supplemental declaration in support of a request for

United States District Court
Northern District of California

United States District Court
Northern District of California

additional attorney fees incurred from February 2020 through February 2021.  *See* ECF No. 649.

On April 19, 2021, the Court granted in part and denied in part the additional attorney fee request.

*See* Second Fee Award, ECF No. 656.  With respect to one category of fees—Amazon's work

related to PersonalWeb's appeal of the Court's final summary judgment order, for which it

requested $106,291.43—the Court declined to award fees while the appeal was pending, and

denied the request without prejudice to Amazon moving again for the same fees.  *See id.* at 2–3.

After excluding this amount and applying certain other reductions to the requested fees, the Court

awarded Amazon $571,961.71 in fees and $11,120.97 in non-taxable costs.  *See id.* at 4.

Accordingly, the Amended Judgment entered on July 27, 2021, incorporated these fee and

cost awards, as well as post-judgment interest accrued through July 14, 2021, and amounted to

$5,403,122.68.  *See* Am. J. 3.

## B.     PersonalWeb's Actions Following Fee Awards

The parties agree that, to date, PersonalWeb has not paid any portion of the judgment

entered against it.  *See, e.g.*, Mot. 10.  Instead, mere days after the Court issued the second of its

two orders awarding fees and costs on April 19, 2021, PersonalWeb commenced two procedural

tracks through which it attempted to circumvent this Court's jurisdiction over post-judgment

proceedings.  First, on April 22, 2021, PersonalWeb took the position that it was not represented

by counsel with respect to Amazon's attempts to secure or enforce any monetary award.  *See* ECF

No. 661-1.  Over the next 16 months, PersonalWeb continued to stymie Amazon's efforts to

enforce the judgment by instructing its then-counsel to file no fewer than *seven* motions to

withdraw or substitute counsel and notices of a purported substitution of counsel—with no

substitute counsel ever properly identified, *see* ECF Nos. 674, 678, 679, 683, 688, 728, 767[2]—

until at last PersonalWeb had its new counsel file a sufficient notice of appearance on August 8,

2022, *see* ECF No. 770.

Second, on April 27, 2021, PersonalWeb's principals and secured creditors filed suit in

---

[2] Amazon states that PersonalWeb's then-counsel attempted to withdraw six times, *see* Mot. 6, but appears not to have counted the notice of withdrawal filed on August 2, 2022, *see* ECF No. 767, which the Court denied and struck for noncompliance with its prior orders, *see* ECF No. 769.

California state court to place PersonalWeb into a receivership.  *See* ECF No. 717-2.

Unsurprisingly, PersonalWeb made no objection to the receivership, and the state court appointed

a receiver on May 10, 2021.  *See* ECF Nos. 717-4, 717-6, 747-4.  PersonalWeb then stipulated to

the entry in state court of an order stating that the state court possessed exclusive jurisdiction over

PersonalWeb's property and assets, and enjoining PersonalWeb's judgment holders from

enforcing any judgment against PersonalWeb.  *See* ECF No. 717-6.  Next, PersonalWeb

repeatedly attempted to use the state court's receivership jurisdiction to assert that this Court

lacked jurisdiction to oversee the enforcement of its judgment, *see, e.g.*, ECF No. 728, forcing the

Court to issue an order directing PersonalWeb's counsel to obtain precise confirmation from the

receiver that the receiver would authorize PersonalWeb to retain and compensate counsel for the

ongoing proceedings in this Court, *see* ECF No. 760.  Within one month of the Court's order,

PersonalWeb provided the Court a written response from the receiver confirming that the receiver

was authorized to pay attorney fees for PersonalWeb's counsel in this action and would in fact pay

such fees for as long as funding was available.  *See* ECF No. 766.

In response to these actions, Amazon has served post-judgment discovery on

PersonalWeb; twice requested the Court compel compliance with its discovery requests; and

intervened in the state court receivership action.  *See* Mot. 6–7; *see also, e.g.*, Decl. of Todd R.

Gregorian ("Gregorian Decl.") ¶ 22, ECF No. 873.

### C.   Appeals in This Action

In addition, over the course of this action, PersonalWeb has timely appealed this Court's

two summary judgment rulings, its claim construction ruling, and its prior awards of attorney fees

and costs.  *See* Mot. 3–6.  The Federal Circuit upheld the Court's first summary judgment ruling in

2020; PersonalWeb then petitioned the Supreme Court for certiorari on April 2, 2021, *see*

*PersonalWeb Techs., LLC v. Patreon, Inc.*, No. 20-1394, 2021 WL 1298201 (S. Ct. Apr. 2, 2021),

and, following briefing, the Supreme Court denied certiorari in May 2022, *see* 142 S. Ct. 2707

(2022) (Mem.).  PersonalWeb appealed the second summary judgment ruling and claim

construction ruling in March 2020, *see* ECF No. 587, and the Federal Circuit upheld both rulings

in August 2021, *see* ECF Nos. 709, 710.  PersonalWeb also appealed the Court's order awarding

1    attorney fees and costs of $5,401,625.06; the Federal Circuit affirmed that ruling on November 3,

2    2023.  *See In re PersonalWeb Techs. LLC*, 85 F.4th at 1164.

3          **D.      The Present Motion**

4          Amazon requests $2,856,570.62 in attorney fees and $193,299.37 in costs for work

5    performed between March 2021 and March 2023.  *See* Not. of Revised Fees, Exh. A ("Total Fee

6    Chart"), ECF No. 914.  The path to these numbers involved a series of filings.  On May 5, 2023,

7    Amazon submitted declarations from counsel for Fenwick & West, LLP ("Fenwick"), Steptoe

8    Johnson LLP ("Steptoe"), and Paul Hastings LLP ("Paul Hastings") regarding a further request for

9    supplemental fees for work performed between March 2021 and March 2023, but did not file an

10   underlying fee motion with the declarations.  *See* Gregorian Decl.; Decl. of Steven K. Davidson

11   ("Davidson Decl."), ECF No. 874; Declaration of Stephen B. Kinnaird ("Kinnaird Decl."), ECF

12   No. 875.  The Gregorian Declaration included a fee chart and cost chart.  *See* Gregorian Decl.,

13   Exhs. B–C, ECF Nos. 873-5, 873-6.  The Court ordered Amazon to file a motion for supplemental

14   fees, *see* ECF No. 876, after which Amazon filed the pending Motion, although it did not include

15   further declarations or a cost chart, and its attached fee chart—which categorized the requested

16   fees into Federal Appeals (Fees); Federal Appeals (Other); Post-Judgment Enforcement; State

17   Court Judgment Enforcement; and Case Management—did not indicate total hours per category or

18   the full sum of attorney fees requested by Amazon.  *See* Mot., Exh. A, ECF No. 880-1.  The

19   Motion initially requested over $3.13 million in fees for work performed from March 2021 to

20   March 2023; $106,291.43 in previous appeal fees incurred between February 2020 and February

21   2021; and $193,605.69 in costs (which was not mentioned in the Motion, which merely referenced

22   "further supplemental . . . costs as set forth in [Amazon's] declarations").  *See* Mot. 1, 10.

23          After PersonalWeb filed its opposition to the Motion, Amazon filed a notice of revisions to

24   its Motion to withdraw over $340,000 of fees and costs incurred in connection with opposing two

25   anti-SLAPP motions in state court.  *See* Anti-SLAPP Not., ECF No. 893.  The notice included a

26   revised fee chart—which used the same categories as the prior chart and still provided no totals—

27   and cost chart.  *See id.* at Exh. B ("Final Hourly Chart"), ECF No. 893-5; Exh. C ("Cost Chart"),

28   ECF No. 893-6.  Amazon then filed a reply in support of its motion, which stated in an

United States District Court
Northern District of California

accompanying declaration—though not in the reply brief—that Amazon was further withdrawing nearly $37,000 of attorney fees incurred in connection with litigation of alter ego issues in state court, but did not include a revised fee chart reflecting the change in Amazon's fee request.  *See* Reply, ECF No. 903; Decl. of Todd. R. Gregorian in Supp. of Reply ("Gregorian Reply Decl.") ¶¶ 2–8, ECF No. 903-1.

At the hearing on the Motion, the Court requested that Amazon submit a chart reflecting the total amounts it requested per fee category, and that Amazon subdivide the category of "Federal Appeals (Other)" to inform the Court of the amount requested for each appeal.  The Court additionally instructed PersonalWeb to file a supplemental opposition detailing its objections to fees incurred in federal court that PersonalWeb asserts were incurred in pursuit of alter ego claims.  PersonalWeb submitted its supplemental opposition on November 21, 2023, *see* Supple. Opp'n, ECF No. 910; Amazon submitted its fee chart on November 28, 2023, *see* Total Fee Chart; and Amazon filed a supplemental reply regarding the alter ego issue on December 5, 2023, *see* Suppl. Reply, ECF No. 919.  Amazon's Total Fee Chart divides the "Federal Appeals (Other)" category into two appeals—one on the *Kessler* issue and the other on non-infringement and claim construction—but additionally states that over $52,000 in fees previously ascribed to "Federal Appeals (Other)" is in fact attributable to "Fees on Fees" (previously termed "Federal Appeals (Fees)"), and that over $57,000 previously also ascribed to "Federal Appeals (Other)" is attributable to the state court receivership proceedings.  *See* Total Fee Chart 1 nn.3–4.[3]  Despite having made large changes to the requested fee amounts in multiple categories outside of those initially described as "Federal Appeals (Other)," Amazon did not submit a revised fee chart informing the Court of the timekeepers and number of hours applicable to each category.

## II.    LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "District courts may determine whether a case is 'exceptional' in the

---

[3] The Total Fee Chart states that these fees were previously categorized as "Federal Appeals," but the prior charts had no such standalone category, and the Court has traced the shifting fee amounts to the "Federal Appeals (Other)" category.

case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, (2014); *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011) ("[W]e are mindful that the district court has lived with the case and the lawyers for an extended period."). "The legislative purpose behind § 285 is to prevent a party from suffering a 'gross injustice,'" and not to punish a party for losing. *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017); *see also Octane Fitness*, 572 U.S. at 548 (noting fees not awarded "as a penalty for failure to win a patent infringement suit") (citation omitted). Although § 285 "imposes no specific evidentiary burden, much less such a high one" as a clear and convincing evidence standard, the Supreme Court has noted that patent infringement litigation is generally governed by a preponderance of the evidence standard. *Octane Fitness*, 572 U.S. at 557.

The Federal Circuit has recognized that although civil litigation "often includes numerous phases," a case "should be viewed more as an 'inclusive whole' rather than as a piecemeal process when analyzing fee-shifting under § 285." *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 516 (Fed. Cir. 2014) (quoting *Comm'r, I.N.S. v. Jean*, 796 U.S. 154, 161–62 (1990)). Not only does a district court possess the "inherent equitable power to make whole a party injured by an egregious abuse of the judicial process," but "Congress enacted Section 285 to codify in patent cases the 'bad faith' equitable exception" to the general rule that parties bear their own fees and costs, and to "authorize[] awards of attorney fees to prevailing defendants 'to enable the court to prevent a gross injustice to an alleged infringer.'" *Mathis v. Spears*, 857 F.2d 749, 758 (Fed. Cir. 1988) (quoting S. Rep. No. 1503, 79th Cong., 2d Sess. (1946), *reprinted in* 1946 U.S. Code Cong. Serv. 1386, 1387). Accordingly, "§ 285 does not bar the trial court from awarding fees for the entire case, including any subsequent appeals." *Therasense*, 745 F.3d at 517 (citing *Jean*, 496 U.S. at 160); *see also Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 692 (Fed. Cir. 1984) ("Neither § 285 nor its legislative history distinguishes between awarding attorney fees in the district court and in the appellate court.").

## III. DISCUSSION

Amazon now seeks $2,856,570.62 in fees and $193,299.37 in costs for work undertaken by

its attorneys between March 2021 and March 2023.  *See* Mot. 2; Total Fee Chart 1–2.  In evaluating Amazon's request, the Court divides the work into the following categories:  (1) Amazon's defense of PersonalWeb's petition for certiorari of the Federal Circuit's decision affirming the Court's first summary judgment order and of PersonalWeb's appeal of the Court's claim construction and second summary judgment orders; (2) Amazon's pursuit of fees, including defending the appeal of the Court's fee award; (3) Amazon's work to enforce the Court's judgment in federal court; and (4) Amazon's intervention efforts in state court.[4]  Within each category, the Court will evaluate both the recoverability of the fee category under the applicable law and, if it determines that some or all of the fees are recoverable, the reasonableness of the requested fees.  The Court will then turn to costs.

Before doing so, however, the Court notes with grave displeasure that the overriding theme of PersonalWeb's post-judgment conduct has been one of bad-faith evasion of the Court's judgment and abuse of due process protections.  PersonalWeb's two-track strategy of attempting to avoid this Court's jurisdiction, *see supra*, at Part I(B), has been disgraceful, and as clear an example of bad faith as any that this Court has had the displeasure of observing from the bench.  Yet it is but one facet of PersonalWeb's obvious strategy of litigating this case with "obfuscation, deflection and mischaracterization."  *In re PersonalWeb Techs. LLC*, 85 F.4th at 1162–63 (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1357 (Fed. Cir. 2002)).

Having noted the context in which the instant Motion arises, the Court now turns to the recoverability and reasonableness of the fees requested by Amazon.

### A.       Appeals of Claim Construction and Summary Judgment Orders

Amazon first seeks fees based on (1) PersonalWeb's petition for certiorari of the Federal Circuit's decision affirming the Court's *Kessler* ruling in its first summary judgment order, *see*

---

[4] The Court recognizes that Amazon has included a "case management" fee category in its various fee charts, *see, e.g.*, Final Hourly Chart; Total Fee Chart, and that the declarations preceding the Motion discussed these fees, *see* Gregorian Decl. ¶ 22(e).  However, Amazon's Motion does not request case management fees.  *See generally* Mot.  The Court informed Amazon that it would not act on any fee request without a motion for further supplemental fees for the Court to consider, *see* ECF No. 876, and the Court accordingly does not take notice of Amazon's case management fees.

United States District Court
Northern District of California

ECF No. 394, as well as (2) PersonalWeb's appeal to the Federal Circuit of the Court's claim construction ruling, *see* ECF No. 485, and its second summary judgment order on non-infringement, *see* ECF No. 578.  *See* Mot. 3–5.  The Court reviews the latter category first.

### 1.   Appeal of Claim Construction and Non-Infringement Orders

Amazon requests $3,881.94 in attorney fees for work performed from March 2021 through March 2023 defending PersonalWeb's appeal of the Court's claim construction and non-infringement orders, as well as $106,291.43 in attorney fees for 169.7 hours of work that the Court previously denied without prejudice prior to the Federal Circuit's decision on appeal, for a total of $110,173.37.  *See* Total Fee Chart 1; Second Fee Award 2–3.  PersonalWeb does not dispute the recoverability of Amazon's fees for this category of work,[5] nor the reasonableness of counsel's fees except with respect to Amazon's post-judgment enforcement efforts.  *See generally* Opp'n.

The Court has already found this case to be exceptional under § 285 and awarded fees for prior work incurred in connection with the claim construction and non-infringement, and the Federal Circuit has affirmed both the exceptionality finding and the awarded fees.  *See generally* Order Re Exceptional Case; *see also* First Fee Award 18–21; *In re PersonalWeb Techs. LLC*, 85 F.4th at 1162–63.  Having found the case exceptional, so that the requested fees are recoverable, the Court further finds that Amazon's request is reasonable in light of the work performed and skill required in successfully opposing PersonalWeb's appeal on claim construction and non-infringement.  The Court will grant the requested attorney fees of $110,173.37.

### 2.   Petition for Certiorari Regarding *Kessler* Ruling

Amazon next requests $499,017.28 in fees for its work on the *Kessler* issue.  *See* Total Fee Chart 1.  The Court previously found that the fees Amazon incurred in connection with its motion for summary judgment on claim preclusion and *Kessler* doctrine issues, including its defense of PersonalWeb's appeal to the Federal Circuit of the order on these issues, were recoverable under 35 U.S.C. § 285 because Amazon would not have incurred these fees but for the exceptional

---

[5] Although PersonalWeb states that it opposes Amazon's request for $612,871.22—the original amount requested for the "Federal Appeals (Other)" category, which included the claim construction and non-infringement appeal, *see* Gregorian Decl., Exh. B—its argument only concerns the *Kessler* issue.  *See* Opp'n 8–9.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    nature of PersonalWeb's decision to bring claims that were "objectively baseless and clearly

2    untenable" in light of the Federal Circuit's *Kessler* doctrine.  *See* Order Re Exceptional Case 13;

3    First Fee Award 16; Second Fee Award 3–4.  Amazon argues that the Court should maintain a

4    consistent approach and grant the requested fees.  PersonalWeb counters that the *Kessler* fees are

5    not recoverable under § 285 because events subsequent to the Court's entry of the Second Fee

6    Award—including a Delaware district court's decision disagreeing with the Court's *Kessler*

7    analysis and the Supreme Court's call for the views of the Solicitor General regarding

8    PersonalWeb's petition for certiorari—indicate that PersonalWeb's *Kessler* position was not

9    objectively baseless, so that its conduct was not exceptional within the meaning of § 285.  *See*

10   Opp'n 8–9.

### a.    Recoverability

12        In the time since PersonalWeb filed its opposition (and therefore also subsequent to the

13   events PersonalWeb characterizes as rendering its conduct unexceptional), the Federal Circuit has

14   affirmed the fees awarded by the Court in the First Fee Award and Second Fee Award, including

15   those related to Amazon's work on PersonalWeb's appeal to the Federal Circuit of the Court's

16   *Kessler* ruling.  *See In re PersonalWeb Techs. LLC*, 85 F.4th at 1154–62 (affirming finding that

17   case was exceptional for five reasons, one of which was that PersonalWeb's claims were

18   objectively baseless under *Kessler* and should not have been brought).  In its decision, the Federal

19   Circuit also held that it did not "matter that, on appeal to the Supreme Court of [the *Kessler*

20   ruling], Solicitor General views were sought" because "[t]his is a common occurrence."  *Id.* at

21   1156.  Accordingly, the Court finds that Amazon's fees incurred in relation to PersonalWeb's

22   petition for certiorari in continued pursuit of its *Kessler* arguments are recoverable under § 285.

### b.    Reasonableness

24        As noted above, PersonalWeb does not contest the reasonableness of Amazon's attorney

25   fees outside of the post-judgment enforcement context.  *See supra*, at Part III(A)(1).  In reviewing

26   Amazon's request, the Court notes that Amazon's decision to move over $100,000 in fees from

27   the "Federal Appeals (Other)" category to the "Fees on Fees" and "State Court Receivership

28   Proceeding" categories, *see supra*, at Part I(D), without providing an updated chart of hours and

timekeepers, means that the Court is largely unable to determine which timekeeper hours even roughly make up the $499,017.28 in fees now requested.  It is not the Court's duty to review several hundreds of pages of billing sheets and determine which lines relate to which category of work.  It appears, however, that Amazon retained Paul Hastings to represent it before the Supreme Court on this matter, and that Paul Hastings attorneys were Supreme Court specialists who did not perform other work in this matter.  *See* Gregorian Decl. ¶ 7; Kinnaird Decl. ¶¶ 1–5.  Paul Hastings attorneys performed 121.5 hours of work at a $1,500 hourly rate, and 37.7 hours at a $725 hourly rate, for a total of $209,582.50 in fees.  *See* Final Hourly Chart 1–2.  The attorneys' work encompassed devising appellate strategy, developing legal arguments, drafting pleadings, and coordinating and reviewing work.  *See* Kinnaird Decl. ¶¶ 4(a)–(b).  The Court finds the hours worked by the Paul Hastings attorneys, as well as the hourly rates, to be reasonable in light of the work performed and specialization and skill required for a Supreme Court practice.

The Court is unable to discern from Amazon's submissions what other hours and corresponding fees were incurred in connection with the petition for certiorari.  The only other discussion of these fees notes merely that the "Federal Appeals (Other)" category includes the Supreme Court appeal as well as the Federal Circuit appeals of the *Kessler* ruling and the non-infringement ruling, and that the tasks performed "include legal research and preparation of appeal briefs and other court submissions, client correspondence, and related conferences."  Gregorian Decl. ¶ 22(b).  This information, without a clearer picture of the actual hours worked on the petition for certiorari, does not provide the Court with a sufficient basis for a further award.  *See In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1279 (Fed. Cir. 2018)  ("[A]ttorney fees under § 285 are compensatory, not punitive. . . . In such a statutory sanction regime, a fee award may go no further than to redress the wronged party for losses sustained.") (alterations, quotation marks, and internal citations omitted).

Accordingly, the Court will grant Amazon $209,582.50 for attorney fees incurred due to PersonalWeb's petition for certiorari of the *Kessler* ruling.

**B.     Motions and Appeals Regarding Fee Awards**

Amazon next requests $344,990.62 in attorney fees incurred in seeking fees, including

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1  responding to PersonalWeb's appeal of the fees previously awarded by the Court.  *See* Mot. 5–6;

2  Total Fee Chart 1.  Amazon's initial request was for $292,505.92 for its fee appeal, but it informed

3  the Court in its Total Fee Chart that it is now including another $52,484.70 previously categorized

4  as "Federal Appeals (Other)."  *See* Total Fee Chart 1 & n.3.  PersonalWeb's only opposition

5  argument for this category of fees was that no award should be granted while the fee appeal was

6  pending.  *See* Opp'n 3.  However, as the Court has noted, the Federal Circuit has since affirmed

7  the previous fee awards.  *See In re PersonalWeb Techs. LLC*, 85 F.4th at 1163.

8          As the Court has previously held, § 285 permits recovery of fees for time spent on the

9  issue of attorney fees.  *See* First Fee Award 23 (citing, *e.g.*, *Central Soya Co. v. Geo. A. Hormel &*

10  *Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983)); *see also* Second Fee Award 3–4.  The Court has

11  determined from Amazon's submissions that its attorneys spent 481.9 hours on the fee appeal,

12  making up the initial fee request of $292,505.92.  *See* Final Hourly Chart 1–2.  The Court is

13  unable to determine how many hours make up the additional $52,484.70 in requested fees that

14  Amazon shifted from a different category, and in any event finds 481.9 hours to be reasonable in

15  light of the work required.  Accordingly, the Court will award Amazon $292,505.92 in attorney

16  fees for its work incurred in pursuing fees.

17          **C.       Post-Judgment Enforcement in Federal Court**

18          Amazon requests $1,164,436.67 in fees for 1,979.4 hours of work performed before this

19  Court between March 2021 and March 2023 related to Amazon's attempts to enforce the

20  Amended Judgment.  *See* Mot. 6–7; Final Hourly Chart 1–2; Total Fee Chart 1.  The work

21  encompassed in this fee request includes:

22              post-judgment discovery, subpoenas to related third-party entities,
            motion practice, case management conference statements, opposing
23              Stubbs Alderton & Markiles LLP's numerous motions to withdraw as
            counsel, other pleadings, court appearances, . . . team conferences to
24              discuss strategy, correspondence with the clients, review of
            PersonalWeb and its investors' document productions, and
25              preparation of court submissions.

26  Gregorian Decl. ¶ 22(c).  Unlike the fees discussed above, which were incurred in connection with

27  PersonalWeb's appeals and Amazon's pursuit of fees, *see supra*, at Parts III(A)–(B), the Court has

28  not previously determined whether fees Amazon incurred for post-judgment enforcement work are

recoverable in this action.  Amazon argues that these fees are recoverable under § 285 because they were reasonable expenses incurred in prosecuting this action, and were necessitated by PersonalWeb's bad-faith tactics.  *See* Mot. 7.  PersonalWeb challenges both the general recoverability under § 285 of fees incurred for post-judgment enforcement or collection work, as well as the recoverability of fees Amazon incurred by seeking post-judgment discovery in federal court regarding PersonalWeb's potential alter egos and by bringing an unsuccessful motion to compel document production from third parties.  *See* Opp'n 3–4, 9–10; Suppl. Opp'n 2–4.  The Court addresses these recoverability arguments in turn.

### 1.   Recoverability of Post-Judgment Enforcement Fees – In General

As the Court has previously explained, it finds that the "but for" test for fee recoverability is warranted here because although the case is exceptional, PersonalWeb's misconduct "did not so infect the case that a full award, without any discernment of a causal connection between the improper acts and the fees accrued," should be granted.  First Fee Award 7.  That is, the Court will exclude requested fees "not directly traceable to PersonalWeb's egregious misconduct," and otherwise assess the totality of the circumstances in determining whether fee recovery is appropriate under § 285.  *See id.* at 7–8.

PersonalWeb argues that § 285 does not provide for the recovery of post-judgment enforcement fees, but rather is intended "to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit."  Opp'n 3–4 (quoting *Mathis*, 857 F.2d at 755).  The implication of PersonalWeb's argument is that post-judgment enforcement or collection work occurs after the prosecution or defense of the suit, and is therefore outside the scope of § 285.  *See id.*  Amazon responds that the fees incurred in attempting to enforce the judgment must be considered to be part of the "inclusive whole" of the case that must be considered in awarding fees under § 285.  *See* Reply 2–3.

PersonalWeb's argument must be rejected.  First, PersonalWeb's quotation from *Mathis*— which is the only case cited by PersonalWeb—is taken from the Court's rejection of the argument that fees were only available to prevailing patent owners (rather than any prevailing party).  *See Mathis*, 857 F.2d at 755.  The thrust of the discussion in *Mathis* is to broaden the view of fees

United States District Court
Northern District of California

recoverable under § 285, not to narrow it.  *See id.*  Further, the Federal Circuit has made clear that although "[c]ivil litigation often includes numerous phases[,] . . . a case should be viewed more as an 'inclusive whole' rather than as a piecemeal process when analyzing fee-shifting under § 285." *Therasense*, 745 F.3d at 516 (citing *Jean*, 496 U.S. at 161–62).  For example, although it may be true that "nothing in [§] 285, or in any other provision of the Patent Act, address[es] post-judgment fees," *see* Opp'n 3, it is well-settled that a party may recover fees on appeal, which, of course, is generally taken only after final judgment.  *See Therasense*, 745 F.3d at 517 ("Indeed, § 285 does not bar the trial court from awarding fees for the entire case, including any subsequent appeals.") (citation omitted); *see also Williamson v. UNUM Life Ins. Co. of Am.*, 160 F.3d 1247, 1250 (9th Cir. 1998) ("The final judgment rule, which is embodied in 28 U.S.C. § 1291, empowers the circuit courts to hear appeals from all final judgments issued by the district courts.") (citation omitted).  The Court can find no principled reason to cabin post-judgment enforcement work from all other categories of work for which fees are recoverable, particularly in light of the Federal Circuit's instruction to consider a case as an "inclusive whole."  *See Therasense*, 745 F.3d at 516.  Further, to deem Amazon's post-judgment enforcement fees broadly unrecoverable under § 285 would only incentivize PersonalWeb and other parties to engage in bad-faith judgment evasion tactics.  Such a result is at odds with the rationale for fee-shifting under § 285.  *See Mathis*, 857 F.2d at 758 ("[I]t would be inconsistent with the intent of Section 285 to limit [the] prevailing-party . . . to something less than the fees and expenses to which it was subjected . . . in this 'very exceptional' case.").

In considering Amazon's post-judgment enforcement fees incurred through its discovery efforts in federal court, the Court finds that the requested fees arise out of PersonalWeb's long campaign to stymie Amazon's recovery efforts, including by attempting to avoid service of discovery requests and repeatedly filing motions to withdraw counsel without providing for substitute counsel, *see supra*, at Part I(B), and are a continuation of the pre-judgment tactics that caused the Court to determine the case exceptional and award fees.  With the exception of post-judgment work performed solely for the purpose of pursuing an alter ego theory against third parties, which the Court discusses below, *see infra*, at Part III(C)(2), the Court finds that

1    PersonalWeb's post-judgment delay tactics necessitated Amazon's discovery efforts in federal

2    court, and related motion practice.  Accordingly, the Court finds that that Amazon's post-

3    judgment enforcement fees are generally recoverable under § 285 as fees incurred in connection

4    with this exceptional case and required due to PersonalWeb's continuing bad-faith tactics.  *See*

5    *Action Star Enterp. Co., Ltd. v. KaiJet Tech. Int'l, Ltd.*, No. CV 12-08074, 2015 WL 12752877, at

6    *2–3 (C.D. Cal. June 24, 2015) (awarding appellate fees and noting that although appeal need not

7    be independently exceptional for fee award, defendant's post-judgment delay in releasing escrow

8    funds was "yet another instance of . . . imposing unwarranted costs" that supported a fee award).

9    The Court now turns to PersonalWeb's independent argument that certain post-judgment

10   enforcement fees relating to alter ego issues are not recoverable.

   ## 2.  Recoverability of Post-Judgment Fees – Alter Ego Discovery

12       PersonalWeb asserts that Amazon may not recover fees for post-judgment discovery

13   propounded in federal court related to Amazon's potential alter ego claims because no alter ego

14   has been named in this action.  *See* Opp'n 4–7; Suppl. Opp'n 2–4.  Amazon counters that the

15   disputed fees relate to discovery requests regarding "core issues related to enforcing a judgment,

16   including PersonalWeb's assets and liabilities, PersonalWeb's relationship with its principals and

17   to other entities, and transfers among those persons and entities," and that such information "is

18   necessary, for example, to trace PersonalWeb's assets and identify potential fraudulent transfers."

19   Suppl. Reply 1.  Amazon further argues that these issues are independent of an alter ego theory,

20   even if the facts may overlap, and that the work was "necessary only because of PersonalWeb's

21   collusion with its principals and the subpoenaed third parties to manufacture insolvency."  *Id.*

22   Amazon also notes that although it had deducted fees incurred in defending a declaratory

23   judgment action regarding the alter ego issue brought in state court by certain of PersonalWeb's

24   investors, "that was a concession to the need to end fee litigation in this Court; it was *not* a

25   concession that PersonalWeb has any valid objection to the fees requested for work performed in

26   this case."  *Id.* at 3; *see also* Gregorian Reply Decl. ¶ 2.

27       The Court cannot say that fees incurred for discovery solely related to Amazon's potential

28   pursuit of alter ego theories in federal court are sufficiently traceable to PersonalWeb's

misconduct, so that Amazon would not have incurred these fees but for egregious conduct by PersonalWeb. Accordingly, the Court will not award fees for work solely related to alter ego claims. *See In re Rembrandt Techs.*, 899 F.3d at 1267, 1280.

Whether Amazon's fees for work that is relevant to both potential alter ego claims and enforcement of the judgment against PersonalWeb itself is a more difficult question. PersonalWeb argues that this category of work does not exist because Amazon had "actual and constructive knowledge PersonalWeb lacked the assets and revenue streams to satisfy the . . . judgment" as of August 2021, when Amazon appeared in the state court receivership action, so that all discovery Amazon sought after January 2022 was directed at potential alter egos. *See* Suppl. Opp'n 2–4. Amazon counters that its discovery requests focused on enforcing the judgment against PersonalWeb, and that tracing PersonalWeb's assets and transfers, for example, was relevant not only to alter ego questions but also for enforcement goals such as identifying potential fraudulent transfers. *See* Suppl. Reply 1. Amazon further states that its August 2021 appearance in the receivership action did not provide it with the knowledge that PersonalWeb had no assets, and that in fact it is still without a guarantee that the receiver took possession of all of PersonalWeb's assets. *See id.* at 3; Decl. of Todd Gregorian in Supp. of Suppl. Reply ("Gregorian Suppl. Reply Decl.") ¶ 9, ECF No. 919-1. Based on the above, and a review of the billing records identified by the parties, the Court is satisfied that Amazon's fee request includes fees for work related to both judgment enforcement against PersonalWeb as well as potential alter ego claims. *See, e.g.*, Decl. of Patrick McCormick in Supp. of Suppl. Opp'n ("McCormick Suppl. Opp'n Decl."), Exh. B, ECF No. 911-2.

In considering the totality of the circumstances around this action, the Court finds that Amazon's post-judgment discovery efforts to locate PersonalWeb's assets to enforce the judgment are fairly traceable to PersonalWeb's misconduct throughout this case, including, for example, PersonalWeb's months-long post-judgment endeavor to pull trial counsel out of this proceeding without substitute counsel in order to become an unrepresented company and therefore unavailable to the Court. *See supra*, at Part I(B). The Court therefore concludes that Amazon's fees incurred for post-judgment discovery not solely related to alter ego issues are recoverable under § 285.

Pursuant to the Court's discussion with the parties during oral argument on this Motion, PersonalWeb filed an itemized list of the billing entries from Fenwick and Steptoe attorneys for work that PersonalWeb claims was performed in pursuit of Amazon's alter ego theories, which it claims requires a reduction of $566,411.51 in Amazon's requested fees. *See* McCormick Suppl. Opp'n Decl. ¶ 2; *id.* at Exh. B. Amazon's supplemental reply identified a subset of those entries that it asserts were solely directed to alter ego work, totaling $10,046.24 in requested fees for 18.7 hours of work. *See* Gregorian Suppl. Reply Decl., Exh. D, ECF No. 919-5. Having reviewed the disputed billing entries, the Court agrees that the entries identified by Amazon relate solely to work on alter ego issues. The Court has further identified the following 11 additional billing entries that indicate work performed solely regarding Amazon's potential alter ego theories, totaling $8,184.90 in requested fees for 15.9 hours of work.

| Date | Timekeeper | Description | Hours | Original Fee | Adjusted Fee (Requested by Amazon) |
|---|---|---|---|---|---|
| 7/6/2022 | Alyssa Crooke | Review insiders' production to compare with elements of alter ego theory. | 1.3 | $599.30 | $544.70 |
| 7/8/2022 | Alyssa Crooke | Review documents produced by Insiders and organize for responsiveness and relationship to alter ego theory. | 1.5 | $691.50 | $628.50 |
| 8/1/2022 | Alyssa Crooke | Review research on alter ego liability and begin reviewing Insiders' documents for such elements. | 0.8 | $368.80 | $335.20 |
| 9/14/2022 | Alyssa Crooke | Review and categorize documents produced by insiders for alter ego motion. | 2.4 | $1,106.40 | $1,005.60 |
| 10/9/2022 | Alyssa Crooke | Review insiders' document production for alter ego motion. | 1.0 | $461.00 | $419.00 |
| 10/13/2022 | Alyssa Crooke | Review insiders' document production for alter ego terms. | 1.0 | $461.00 | $419.00 |
| 10/19/2022 | Alyssa Crooke | Review insiders' document production for alter ego arguments. | 0.5 | $230.50 | $209.50 |
| 10/20/2022 | Alyssa Crooke | Review Insiders' document production for alter ego arguments. | 1.7 | $783.70 | $712.30 |

| 10/26/2022 | Chris Shawn Lavin | Analyze summary memorandum and alter ego liability. | 1.3 | $1,063.40 | $965.90 |
|---|---|---|---|---|---|
| 10/31/2022 | Alyssa Crooke | Review insiders' production for documents responsive to alter ego theory. | 1.0 | $461.00 | $419.00 |
| 11/15/2022 | Chris Shawn Lavin | Analyze alter ego inquiry regarding connections between PersonalWeb and PersonalWeb investors, conduct records research, and correspondence with team. | 3.4 | $2,781.20 | $2,526.20 |
| **Total** | | | 15.9 | $9,007.80 | $8,184.90 |

*See* Gregorian Suppl. Reply Decl., Exh. D.

Because the Court finds that the entries identified by Amazon and those listed in the table above reflect work regarding Amazon's potential alter ego theories for which fees are not recoverable, the Court reduces the recoverable fees by $18,231.14 for 34.6 hours of work.

### 3.   Unsuccessful Motion to Compel Third-Party Discovery

PersonalWeb initially stated in its opposition brief that it opposed "25 entries from January 2023 to May 2023 totaling $72,163 regarding [Amazon's] unsuccessful motion to compel" documents from third parties. *See* Opp'n 9.  At oral argument, the Court informed counsel for PersonalWeb that no discount would be provided unless PersonalWeb provided a basis for the request by identifying the billing entries and hours devoted to such work. *See* Nov. 16, 2023 Hr'g Tr. ("Tr.") 12:3–14:11, ECF No. 913.  PersonalWeb's supplemental opposition and accompanying exhibits do not isolate or discuss this work. *See* Suppl. Opp'n.  However, the billing entries identified by PersonalWeb with respect to the alter ego issue reflect work performed on the motion to compel from January 2023 to March 2023, and the Court will exercise its discretion to review the billing entries in conjunction with the challenge raised in PersonalWeb's opposition.  The Court agrees with PersonalWeb that the fees Amazon incurred in connection with the motion to compel third parties' documents are not fairly traceable to PersonalWeb.  Amazon is correct that it need not win each piecemeal motion or segment of litigation to be awarded fees. *See* Reply 4 & n.2.  However, the fees should "bear some relation to the extent of the misconduct," lest they become merely punitive, and the Court declines to award Amazon fees against PersonalWeb for a

motion to compel litigated against third parties.  *See In re Rembrandt Techs.*, 899 F.3d at 1279.

The Court identifies the following billing entries as concerning Amazon's motion to compel third parties' documents from January 2023 to March 2023, totaling $10,084.69 in requested fees for 13.8 hours of work.

| Date | Timekeeper | Description | Hours | Original Fee | Adjusted Fee (Requested by Amazon) |
|---|---|---|---|---|---|
| 1/16/2023 | Chris Shawn Lavin | Draft proposed order to motion to joint statement to compel PersonalWeb investors, conduct records research, and correspondence with team. | 0.8 | $860.00 | $594.40 |
| 1/16/2023 | Chris Shawn Lavin | Discussions regarding joint statement to compel PersonalWeb investors, and conduct records research | 1.6 | $1,720.00 | $1,188.80 |
| 1/17/2023 | Chris Shawn Lavin | Prepare exhibits to joint statement to motion to compel, draft sealing papers, conduct legal and records research, and correspondence with team. | 2.5 | $2,687.50 | $1,857.50 |
| 2/15/2023 | Todd Gregorian | Work on discovery issues and further relief against SAM; confer with opposing counsel re privilege log and revise related motion to compel. | 1.8 | $2,151.00 | $1,168.69 |
| 3/20/2023 | Chris Shawn Lavin | Analyze investors' opposition to motion to compel, prepare for and participate in meet and confer, conduct legal and records research, and correspondence and discussions with team and opposing counsel. | 3.3 | $3,547.50 | $2,451.90 |
| 3/22/2023 | Chris Shawn Lavin | Revise motion to compel and supporting documents, draft sealing papers, conduct legal and records research, and correspondence and discussions with team and opposing counsel. | 3.8 | $4,085.00 | $2,823.40 |
| **Total** | | | 13.8 | $15,051.00 | $10,084.69 |

*See* McCormick Suppl. Opp'n Decl., Exh. B.

1    Accordingly, the Court will reduce the recoverable fees by $10,084.69 for 13.8 hours of

2    work incurred in moving to compel production from third parties between January 2023 and

3    March 2023.

4    The Court will now review the reasonableness of Amazon's recoverable fees, which

5    total—after deducting the hours and fees spent on the alter ego and motion to compel issues the

6    Court has deemed unrecoverable, *see supra*, at Parts III(C)(2)–(3)—$1,136,120.84 for 1,931 hours

7    of work.

8                    **4.      Reasonableness**

9    The Court looks to the lodestar calculation for a presumptively reasonable fee amount.  *See*

10   First Fee Award 8 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Vogel v. Harbor*

11   *Plaza Center, LLC*, 893 F.3d 1152, 1161 (9th Cir. 2018); *Flowerider Sur, Ltd. v. Pac. Surf*

12   *Designs, Inc.*, No. 315-cv-01879, 2020 WL 5645331, at *4–6 (S.D. Cal. Sept. 22, 2020); *Env't*

13   *Mfg. Sols., LLC v. Peach State Labs, Inc.*, 274 F. Supp. 3d 1298, 1314–27 (M.D. Fla. Aug. 14,

14   2017)).  The lodestar calculation is the product of the number of hours reasonably expended on the

15   litigation and the reasonably hourly rate.  *See id.*

16   Here, Amazon requests $1,136,120.84 in recoverable attorney fees for 1,931 hours of

17   work, *i.e.*, 1,931 hours of work performed by Fenwick and Steptoe attorneys at an average hourly

18   rate of $588.36.  *See supra*, at Parts III(C)(2)–(3).  PersonalWeb argues that the Amazon's

19   requested hourly rates for its Fenwick attorneys—which averaged $626.17 prior to the Court's

20   deductions—"are unreasonable given counsel's lack of experience in post-judgment enforcement

21   work." [6]  *See* Opp'n 10–11.  PersonalWeb relies on a 2022 survey by a company called "Clio" to

22   argue that the Court should use California's average hourly rate for collections of $295.  *See*

23   Opp'n 9–10.  The only information PersonalWeb provides about Clio is that it "conducts an

24   economic survey that includes billing rates for attorneys by state and practice area."  Decl. of

25   Patrick McCormick in Supp. of Opp'n ("McCormick Decl.") ¶ 1 ECF No. 890-1.  Amazon

26   responds that it has already substantially reduced the hourly rates for most counsel in comparison

27

28   _____

[6] PersonalWeb does not challenge the reasonableness of Steptoe's rates.  *See generally* Opp'n.

United States District Court
Northern District of California

to the fees actually incurred; that counsel in fact has experience in handling judgment enforcement matters; and that transferring the case to collections lawyers unfamiliar with the conduct on which the fee request is made would have been less efficient and more costly. *See* Reply 4–5.

In awarding fees, a reasonable hourly rate is determined by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stetson*, 465 U.S. 886, 895 n.11 (1984)). The relevant community is typically the forum in which the district court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Given these principles, the Court rejects PersonalWeb's suggestion that it use California-wide rates for collections attorneys. The proper geographic situs is the Northern District of California, rather than the state as a whole, and the post-judgment work at issue involved in large part motion practice and discovery that was likely made more efficient by having attorneys familiar with the case performing the necessary work. Further, the Court considers the case as an "inclusive whole" in awarding fees, *see Therasense*, 745 F.3d at 516 (citation omitted), and PersonalWeb's egregious conduct leading to this fee award was made in connection with the entire intellectual property case.

### a.      Reasonable Hourly Rate

The Court previously approved rates for partner J. David Hadden; partner Todd Gregorian; associate Chieh Tung; paralegal Robert Winant; and paralegal Lawrence Gallwas for work performed from 2018 to 2020, and Amazon now requests that same approved rate for those individuals.[7] *See* First Fee Award 25–26; Gregorian Decl. ¶ 5. For those Fenwick attorneys whose work was not previously the subject of a fee award in this action, Amazon requests fees at a discounted 2021 rate: $743.00 for associates Matthew Becker and Christopher Lavin; $714.00 for associate Deena Feit; $623.00 for associate Wenbo Zhang; $419.00 for associates Su Li, Alyssa

---

[7] The billing entries for Amazon's post-judgment enforcement work also include time billed by attorneys not listed in Amazon's Final Hourly Chart. *Compare, e.g.*, Gregorian Suppl. Reply Decl., Exh. D, at 17 (entry by Saina Shamilov), *with* Final Hourly Chart (lacking column for Saina Shamilov). The Court understands that Amazon has not included the fees for such work in its request. *See* Gregorian Decl. ¶ 11; Suppl. Opp'n 2.

United States District Court
Northern District of California

Crooke, and Adrian Rios; and $361 for staff attorney Michelle Waziri. *See id.* ¶¶ 5–6. According to the 2021 American Intellectual Property Law Association's survey, the average hourly billing rate in 2020 for a partner-track attorney at a private firm in the San Francisco consolidated metropolitan statistical area ("CMSA") was $737.00, and the midpoint was $910.00. *See* Gregorian Decl., Exh. 3, at I-49, ECF No. 873-3. The minimum average billing rate for intellectual property lawyers in the San Francisco CMSA was $433.00, and the minimum median was $500.00. *See id.* at F-26. In light of these figures, the Court finds Amazon's requested rates reasonable for work performed from March 2021 to March 2023. *See Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enterps.*, No. CV 08-7587 R, 2009 WL 9137315, at *3 (C.D. Cal. Dec. 14, 2009) ("In intellectual property cases, federal courts routinely rely on the American Intellectual Property Law Association ('AIPLA') economic survey results published every other year.") (citing *Mathis*, 857 F.2d at 754); *see also* First Fee Award 26 (relying on 2019 AIPLA survey).

### b.      Reasonable Hours Expended

PersonalWeb does not challenge the number of hours expended beyond asserting that the Court should apply a 25% reduction in fees "to account for Amazon's failure to omit" entries for work "that Amazon would have performed regardless of PersonalWeb's alleged post-judgment exceptional conduct, . . . and other items such as Amazon's failed attempt to compel production" from third parties. Opp'n 10. Although the Court has previously granted percentage reductions of fees in this action, it explained at the hearing that (1) those reductions were made at PersonalWeb's request and without significant opposition from Amazon and (2) PersonalWeb's current request to carve off 25% from the significant amount of work Amazon performed in post-judgment discovery is too arbitrary. *See* Tr. 12:20–13:17. Accordingly, the Court requested that PersonalWeb identify the billing entries it challenged, and has addressed those challenges and deducted certain fees as unrecoverable. *See supra*, at Parts III(C)(2)–(3).

The Court additionally notes that Amazon has already discounted its fee request by 175.9 hours of work from 30 timekeepers across its entire fee request, used previously approved lesser billing rates for several timekeepers, and used 2021 billing rates for other timekeepers for work performed from 2021 to 2023. *See* Gregorian Decl. ¶¶ 11, 19. These choices result in a request

United States District Court
Northern District of California

1    that is $764,774.17 less than the fees actually incurred and invoiced.  *See id.* ¶ 19.  The Court finds

2    that no additional hourly deductions are necessary following Amazon's voluntary deductions.

3              **5.      Conclusion Regarding Post-Judgment Enforcement in Federal Court**

4              Based on the foregoing, the Court will award $1,136,120.84 in recoverable attorney fees

5    for 1,931 hours of work performed on post-judgment enforcement matters in federal court from

6    March 2021 to March 2023.

7         **D.      Intervention in State Court Receivership Proceedings**

8              Amazon requests $619,053.23 in fees incurred for work in the California state court

9    receivership proceedings.  *See* Mot. 7–10; Final Hourly Chart 1–2; Total Fee Chart 1.  Amazon

10   originally requested over $940,000 in fees for its work in the state court proceedings, but then

11   removed $344,172,10 in its requested fees for work performed on an anti-SLAPP motion,

12   removed an additional $36,886.94 for work performed on alter ego litigation, and added

13   $57,487.80 in fees previously categorized as federal appellate fees.  *See* Gregorian Decl., Exh. B;

14   Anti-SLAPP Not. 1; Gregorian Reply Decl. ¶ 2; Total Fee Chart 1 n.4.  Amazon provided its most

15   recent hourly chart in connection with the reduction in anti-SLAPP fees; accordingly, the Court is

16   unaware of the timekeeper hour changes made to reduce the fee request by $36,886.94 or increase

17   it by $57,487.80.  *See* Final Hourly Chart.  At oral argument, Amazon indicated that the fee

18   request included work performed in connection with "intervention in the receivership action, [and]

19   certain actions we've had to take there, such as compelling the receiver to actually give us

20   information as another creditor of PersonalWeb, and appealing the original denial of intervention."

21   Tr. 17:9–13.

22              As with Amazon's request for fees for post-judgment enforcement work performed in

23   federal court, the Court has not previously determined whether these fees requested for work

24   performed in the state court receivership proceedings are recoverable.  Amazon argues that these

25   fees are recoverable (1) under § 285 as an ancillary proceeding requiring work that would not have

26   been necessary but for PersonalWeb's principals' exceptional conduct before the Court, and (2)

27   under the interplay of Federal Rule of Civil Procedure 69, which Amazon asserts permits the

28   application of California law to the fee request, and California Code of Civil Procedure § 685.040.

United States District Court
Northern District of California

1    *See* Mot. 7–9.  PersonalWeb counters that the state court work was performed in post-judgment

2    proceedings for which fees are not contemplated by § 285; that Rule 69 is inapplicable; that

3    California law, even if applicable, prohibits the recovery of the attorney fees sought by Amazon;

4    that the fees are not recoverable in this venue; and that the fees were incurred in litigation against

5    entities and individuals other than PersonalWeb.  *See* Opp'n 3–8.

6                    **1.    Recoverability**

7          The Court has already rejected PersonalWeb's overarching argument that post-judgment

8    enforcement fees—in any court—are not recoverable under § 285.  *See supra*, at Part III(C)(1).

9    The first question at hand is therefore whether § 285 permits recovery of fees incurred for

10   Amazon's work in the state court receivership proceeding to pursue the recognition and

11   enforcement of the Court's Amended Judgment.  As Amazon acknowledges, this question does

12   not appear to have been previously adjudicated.  *See* Tr. 16:10–12 ("[W]e don't have a case that is

13   on all fours under [§] 285.  What we have is a collection of district courts that have applied [§] 285

14   to different post-judgment proceedings.").

15         The Court once again takes as a starting principle the Federal Circuit's instruction that

16   district courts should view a case as an "inclusive whole" when awarding fees under § 285, and

17   the guidance that "§ 285 does not bar the trial court from awarding fees for the entire case,

18   including any subsequent appeals."  *Therasense*, 745 F.3d at 516–17 (citation omitted).  The

19   requested fees were incurred in a state court receivership action, and thus in a formally separate

20   case from this action.  *See* Mot. 7.  Importantly, however, the facts in this case indicate that

21   PersonalWeb—which made no objection to the receivership in a process that began within 10 days

22   of the Court's Second Fee Award—entered the receivership in a bid to become judgment proof,

23   and indeed a preliminary injunction preventing any creditors from enforcing judgments was

24   entered just three weeks after the issuance of the Second Fee Award.  *See supra*, at Part I(B).

25   Accordingly, in order to attempt to enforce the judgment following these actions, Amazon had

26   little choice but to move to intervene and ensure that its claim was made known to the receiver.

27   Further, counsel for Amazon has represented that Amazon can now only collect on the judgment

28   against PersonalWeb through the receivership action.  *See* Tr. 18:23–19:8.

24

In *PPG Industries, Inc. v. Celanese Polymer Specialties Co., Inc.*, the Federal Circuit reasoned that a party may recover fees under § 285 for work performed in an action separate from the underlying district court proceedings.  *See* 840 F.2d 1565 (Fed. Cir. 1988).  There, the defendant in a patent infringement suit before the district court was forced to participate in proceedings before the United States Patent and Trademark Office ("PTO") when the plaintiff sought reissue applications before the PTO.  *See id.* at 1567–68.  The Federal Circuit found that the "parties and the district court clearly intended to replace the district court litigation with the reissue proceedings," so that the defendant was "forced . . . to perform in the PTO precisely the same type of work [the defendant] would have performed had the case proceeded to trial," and on that basis reversed the district court's denial of the defendant's fees for the proceedings before the PTO.  *Id.* at 1568.  Here, although the proceedings in the state court receivership do not require Amazon to engage in patent infringement litigation, PersonalWeb's use of the receivership as a shield against judgment has forced Amazon to perform judgment enforcement work.  Other courts have found § 285 permits recovery of fees incurred to enforce a judgment or settlement agreement. *See Schmidt v. Zazzara*, 544 F.2d 412, 414–15 (9th Cir. 1976) (affirming award of fees for motion to compel performance of settlement agreement providing for entry of consent judgment where other party engaged in bad-faith attempt to repudiate agreement and judgment); *Fitness IQ, LLC v. TV Prods. USA, Inc.*, No. 10-cv-2584, 2012 WL 13175920, at *5 (S.D. Cal. Sept. 14, 2012) (awarding fees under § 285 for work incurred in enforcing patent settlement).

As the court in *Fitness IQ* noted, the Federal Circuit has noted that where a party seeks fees under § 285 for nonpatent issues in a patent litigation, the nonpatent issues should be "'so intertwined with he patent issues' as to make [§] 285 applicable to the case in its entirety." *Gjerlov v. Schuler Lab'ys, Inc.*, 131 F.3d 1016, 1024 (Fed. Cir. 1997) (citation omitted).  Here, the entire underlying litigation involved patent issues.  In the post-judgment context, the Court finds that PersonalWeb's bad-faith litigation tactics—including the delays induced in this action to permit PersonalWeb time to arrange its receivership proceedings—required Amazon to intervene in the state court receivership proceeding to prevent its judgment as the prevailing party in the patent litigation from being rendered meaningless.  The Court is greatly concerned that a refusal to

award fees would create a roadmap for losing parties to avoid accountability for their exceptional conduct, and therefore contravene the very purpose of the § 285. *See Mathis*, 857 F.2d at 758 (Congress enacted § 285 to . . . authorize[] awards of attorney fees to prevailing defendants 'to enable the court to prevent a gross injustice to an alleged infringer.'") (citation omitted). The Court accordingly finds that PersonalWeb's continued exceptional conduct required Amazon's intervention in the state court proceedings, and that the fees for such work are recoverable under § 285. *See Action Star Enterp.*, 2015 WL 12752877, at *2–3 (awarding fees for appellate work based in part on party's continued practice of "imposing unwarranted costs" on prevailing party).

Because the Court finds Amazon's requested fees are recoverable under § 285, it need not reach the parties' arguments about the applicability of Federal Rule of Civil Procedure 69 and California Code of Civil Procedure § 685.040. *See* Mot. 8–10; Opp'n 4–7.

### 2.   Reasonableness

PersonalWeb's only objection to the reasonableness of the requested fees is based on the hourly rates of Amazon's Fenwick attorneys. *See* Opp'n 10–11. The Court finds the hourly rates reasonable for the same reasons discussed above. *See supra*, at Part III(C)(4)(a).

However, in attempting to assess which timekeeper hours were spent on the state court receivership proceedings, the Court faces a struggle similar to that described in its evaluation of the fees requested for the *Kessler* petition for certiorari. *See supra*, at Part III(A)(2)(b). Amazon arrived at its request for $619,053.23 in fees by (1) deducting $344,172,10 in fees for work performed on an anti-SLAPP motion from its original request of over $940,000; (2) deducting an additional $36,886.94 for work performed on alter ego litigation; and (3) adding $57,487.80 in fees previously categorized as federal appellate fees. *See* Gregorian Decl., Exh. B; Anti-SLAPP Not. 1; Gregorian Reply Decl. ¶ 2; Total Fee Chart 1 n.4. Amazon's most recent hourly chart—provided after the first of the three changes described above—indicates that it spent 827.9 hours and $598,955.17 of work in the state court proceedings. *See* Final Hourly Chart. The average hourly rate for this work is $723.46. Amazon has since deducted $36,886.94 of work—or about 51 hours, using the average hourly rate—performed in state court on the alter ego litigation, which is separate from the receivership proceedings. *See* Gregorian Reply Decl. ¶ 2. But the Court is

utterly unable to determine where and how the additional $57,487.80 in fees was spent, and it will not consider this amount.  *See* Total Fee Chart 1 n.4.

The Court finds that Amazon has reasonably requested fees of $562,068.23 for about 776.9 hours of work—*i.e.*, the $598,955.17 request less the $36,886.94 of alter ego work—in the state court receivership proceeding, which required, among other tasks, "appeal of the original denial of intervention, petition for writ of supersedeas (motion for stay), preparation of the complaint-in-intervention, preparation of counterclaims, a successful motion to compel the receiver to share information about the receivership with Amazon, appellate oral argument and Superior Court appearances, and . . . preparation of other court submissions."  Gregorian Decl. ¶ 22(d). Accordingly, the Court will award Amazon these fees.

**E.     Costs**

Lastly, Amazon requests $193,299.37 in non-taxable costs incurred from March 2021 to March 2023.  *See* Mot. 1; Total Fee Chart 2.  Amazon had originally requested $193,605.69 in costs, but reduced its request by $306.32 in conjunction with the fee reduction related to the anti-SLAPP litigation in state court.  *See* Anti-SLAPP Not. 1; Total Fee Chart 2 n.5.  PersonalWeb does not challenge the request for costs.  *See generally* Opp'n.

Amazon's requested costs "are related to litigating this case, such as data hosting fees (including fees required for hosting and reviewing documents as part of the discovery dispute over the attorney fee motion); chambers copies; transcript order fees; and copying fees."  Gregorian Decl. ¶ 25; *see also* Anti-SLAPP Not., Exh. C (updated cost summary), ECF No. 893-6.  The Court has reviewed the cost summary and finds Amazon's request to be reasonable, and will accordingly grant the request.

**F.     Steptoe Discount**

Amazon indicates that it received a discount of $4,048.50 from Steptoe by which the fee award should be reduced.  *See* Total Fee Chart 2.  The Court will deduct this amount from the final award.

**IV.   ORDER**

For the foregoing reasons, the Court hereby ORDERS that Amazon's motion for further

supplemental fees and costs is GRANTED IN PART and DENIED IN PART.  Amazon is awarded attorney fees and costs totaling $2,499,701.73, consisting of the following:

1. $110,173.37 for work related to the federal appeals of the claim construction and non-infringement orders, itself constituting $3,881.94 for work performed from March 2021 through March 2023 and $106,291.43 for prior work for which the Court previously denied fees without prejudice;

2. $209,582.50 for work related to PersonalWeb's petition for certiorari of the *Kessler* ruling;

3. $292,505.92 for work related to pursuing fee awards;

4. $1,136,120.84 for work performed on post-judgment enforcement matters in federal court;

5. $562,068.23 for work performed on post-judgment enforcement in the state court receivership proceedings; and

6. $193,299.37 in non-taxable costs; less

7. $4,048.50 discounted by Steptoe.

**IT IS SO ORDERED.**

Dated: December 15, 2023

Beth Labson Freeman
United States District Judge